**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

**UNITED STATES OF AMERICA,**
    **Plaintiff,**

**v().**                                                       **Criminal Case No: 1:15-cr-35**

**DAVID PHILLIP HABERMAN,**
    **Defendant.**

## OPINION/REPORT AND RECOMMENDATION REGARDING PLEA OF GUILTY IN FELONY CASE

This matter has been referred to the undersigned Magistrate Judge by the District Court for purposes of conducting proceedings pursuant to Federal Rule of Criminal Procedure 11. Defendant, David Phillip Haberman, in person and by counsel, Barry Boss and Sharon Potter, appeared before me on April 1, 2015. The Government appeared by Michael Stein, its Assistant United States Attorney. The Court determined that Defendant would enter a plea of "Guilty" to a one-count Information.

The Court proceeded with the Rule 11 proceeding by placing Defendant under oath.

The Court determined that Defendant's plea was pursuant to a written plea agreement, and asked the Government to tender the original to the Court. The Court asked counsel for the Government if the agreement was the sole agreement offered to Defendant. The Government responded that the parties engaged in extensive negotiations, and that this was the sole written agreement offered to Defendant. Counsel for Defendant agreed, and stated that the instant agreement was more favorable to Defendant than any binding or non-binding offers that may have been discussed. The Court asked counsel for the Government to summarize the written plea agreement. Defendant stated that the agreement as summarized by counsel for the Government was the agreement. The Court **ORDERED** the written plea agreement filed and found the requirements of <u>Missouri v. Frye</u>, 132 S. Ct. 1399 (2012), to be satisfied.

The Court then inquired whether Defendant was a citizen of the United States. Defendant responded that he was a citizen. The undersigned asked Defendant whether he understood that if he were

not a citizen of the United States, by pleading guilty to a felony charge he would be subject to deportation at the conclusion of any sentence; that he would be denied future entry into the United States; and that he would be denied citizenship if he ever applied for it. Defendant stated that he understood.

Thereupon, the Court inquired of Defendant concerning his understanding of his right to have an Article III Judge hear and accept the entry of his guilty plea and his understanding of the difference between an Article III Judge and a Magistrate Judge. Defendant stated in open court that he voluntarily waived his right to have an Article III Judge hear his plea and voluntarily consented to the undersigned Magistrate Judge hearing his plea, and tendered to the Court a written Waiver of Article III Judge and Consent To Enter Guilty Plea Before the United States Magistrate Judge, which waiver and consent was signed by Defendant and countersigned by Defendant's counsel and was concurred in by the signature of the Assistant United States Attorney appearing.

Upon consideration of the sworn testimony of Defendant, the Court finds that the oral and written waiver of Article III Judge and consent to enter guilty plea before a Magistrate Judge was freely and voluntarily given and the written waiver and consent was freely and voluntarily executed by Defendant, David Phillip Haberman, after having had his rights fully explained to him and having a full understanding of those rights through consultation with his counsel, as well as through questioning by the Court. The Court **ORDERED** the written Waiver and Consent filed.

The undersigned Magistrate Judge inquired of Defendant and his counsel relative to Defendant's knowledge and understanding of his constitutional right to proceed by Indictment and the voluntariness of his Consent to Proceed by Information and of his Waiver of his right to proceed by Indictment. Defendant, under oath, acknowledged his voluntary waiver of his right to proceed by Indictment and his agreement to voluntarily proceed by Information. Defendant and his counsel executed a written Waiver of Indictment. The undersigned Magistrate Judge then received and **ORDERED** the Waiver of

Indictment and the Information filed and made a part of the record herein.

The undersigned then reviewed with Defendant the Information, including the elements the United States would have to prove at trial, charging him with conspiracy to purloin government funds, in violation of 18 U.S.C. § 371. The undersigned reviewed with Defendant the statutory penalties applicable to an individual adjudicated guilty of the felony charge contained in the Information. From said review the undersigned Magistrate Judge determined Defendant understood the nature of the charge pending against him; understood that the possible statutory maximum sentence which could be imposed upon his conviction or adjudication of guilty on that charge was imprisonment for a term of not more than five (5) years; a fine of not more than $250,000.00, or both imprisonment and a fine; and a term of supervised release of three (3) years. Defendant further understood the Court would impose a special assessment of $100.00 for the felony conviction payable before the date of sentencing and understood that the Court may require him to pay the costs of his incarceration and supervised release.

The Court then inquired of Defendant regarding his understanding of his conditional waiver of appellate rights as contained in the written plea agreement, as follows:

Ct.   Do you understand, sir, that you have a very valuable right guaranteed to you under 18 U.S.C. 3742, to appeal your conviction and your sentence and how the sentence was arrived at by filing an appeal with the Fourth Circuit Court of Appeals within 14 days of sentencing?

Def.   Yes, Your Honor.

Ct.   Under your written plea agreement, do you fully understand that you have given up your right to appeal your conviction and sentence?

Def.   Yes, Your Honor.

Ct.   In addition, you have a right under 28 U.S.C. 2255 to file what is commonly called a collateral

attack, some call it a writ of habeas corpus. There are several statutes, 28 U.S.C. 2255 is only one of them. Under your agreement, you're giving up your right to collaterally attack or challenge the sentence, how it was calculated, and how it's being executed in return for the concessions made by the Government.

Def. Yes, Your Honor.

Ct. Did you intend to give up both your direct right of appeal and your indirect collateral attack rights?

Def. Yes, Your Honor.

Ct. Did you understand those rights fully before you signed the agreement to give them up?

Def. Yes, Your Honor.

Ct. Do you fully understand that under that paragraph, the only thing you are reserving to yourself is the right to claim that there was either ineffective assistance of counsel or prosecutorial misconduct or both, and that has to have been discovered after today?

Def. Yes, Your Honor.

Ct. Is there any prosecutorial misconduct that you are aware of as you sit here today?

Def. No, Your Honor.

Ct. Is there any ineffective assistance of counsel as you sit here today?

Def. No, Your Honor.

Ct. So based on your answers, you have to discover it after today.

Def. Yes, Your Honor.

Upon consideration of all which, the Court finds Defendant understood his appellate rights and knowingly and voluntarily waived those rights pursuant to the condition in the plea agreement.

Defendant thereafter stated in open court he understood and agreed with the terms of the written plea agreement as summarized by the Assistant United States Attorney during the hearing, and that it contained the whole of his agreement with the Government and no promises or representations were made to him by the Government or anyone else other than those terms contained in the written plea agreement. The undersigned Magistrate Judge further examined Defendant relative to his knowledgeable and voluntary execution of the written plea bargain agreement signed by him and determined the entry into said written plea agreement was both knowledgeable and voluntary on the part of Defendant. The Court further determined that Defendant was competent to proceed with the Rule 11 plea hearing.

The undersigned Magistrate Judge inquired of Defendant, his counsel, and the Government as to the non-binding recommendations and stipulations contained in the written plea bargain agreement and determined that Defendant understood, with respect to the plea bargain agreement and to Defendant's entry of a plea of guilty to the felony charge contained in the Information, the undersigned Magistrate Judge would write the subject Report and Recommendation and would further order a pre-sentence investigation report be prepared by the probation officer attending the District Court, and only after the District Court had an opportunity to review the pre-sentence investigation report, would the District Court adjudicate the Defendant guilty of the felony offense contained in the Information and make a determination as to whether to accept or reject any recommendation or the stipulation contained within the plea agreement or pre-sentence report. The undersigned reiterated to the Defendant that the District Judge may not agree with the recommendations or stipulations contained in the written agreement. The undersigned Magistrate Judge further advised Defendant, in accord with Federal Rule of Criminal Procedure 11, that in the event the District Court Judge refused to follow the non-binding recommendations or stipulations contained in the written plea agreement and/or sentenced him to a sentence which was different from that which he expected, he would not be permitted to withdraw his

guilty plea. Defendant acknowledged his understanding and maintained his desire to have his plea of guilty accepted.

Defendant also understood that his actual sentence could not be calculated until after a pre-sentence report was prepared and a sentencing hearing conducted. The undersigned also advised, and Defendant stated that he understood, that the Sentencing Guidelines are no longer mandatory, and that, even if the District Judge did not follow the Sentencing Guidelines or sentenced him to a higher sentence than he expected, he would not have a right to withdraw his guilty plea. Defendant further stated his attorney showed him how the advisory guideline chart worked but did not promise him any specific sentence at the time of sentencing. Defendant stated that he understood his attorney could not predict or promise him what actual sentence he would receive from the sentencing judge at the sentencing hearing. Defendant further understood there was no parole in the federal system, he may be able to earn institutional good time, and that good time was not controlled by the Court, but by the Federal Bureau of Prisons.

Defendant further understood and agreed to the entry of a forfeiture personal money judgment in the amount of $84,884.55. He further waived all constitutional and statutory challenges in any manner to any forfeiture carried out in accordance with the written plea agreement on any grounds. He also consented to debarment from participating in government contracts.

The Court heard the testimony of Special Agent ("SA") Sylvia Bergstedt of the Department of Energy's Office of the Inspector General. SA Bergstedt testified that the charge against Defendant involved government contracts through the Department of Energy and the Department of Defense. SA Bergstedt also testified regarding the parties involved in these contracts. First, the National Energy Technology Laboratory ("NETL") has two facilities, one in Morgantown, West Virginia, and one in Pittsburgh, Pennsylvania. NETL is funded by the Department of Energy. Second, Research and

Development Solutions, LLC ("RDS") is an entity that did business with the Government from 2004 until 2010. RDS is comprised of three (3) companies: Parsons, Scientific Applications International Corporation ("SAIC"), and EG&G. On September 24, 2004, RDS entered into a site support contract with NETL. Third, Technology Management Services ("TMS") is a company that did business with NETL. On November 1, 2004, TMS entered into a site support contract with NETL. That contract lasted until January 2010. Fourth, on January 30, 2006, Logistics Management Institute ("LMI") entered into a time and materials contract with the Department of Defense. Fifth, on March 30, 2006, NETL awarded a cooperative agreement for co-production of substitute natural gas to the Arizona Public Service, a public utility in the State of Arizona.

During the relevant time period, Defendant was involved with three (3) companies. He was the co-owner and co-manager of IF, LLC. He was the chairman of the board and the executive director of the Impact E3 Foundation, Inc., a non-profit organization. Later, that company became Impact E3, LLC, a for-profit company. Defendant was the co-owner and co-manager of Impact E3, LLC. On August 21, 2006, Defendant caused IF, LLC to enter into a consulting agreement with RDS. This agreement was to develop NETL's potential capabilities with regard to the Department of Energy's hydrogen initiative, and to assess issues important to NETL. On August 29, 2006, Defendant caused IF, LLC to enter into a consulting agreement with Parsons separate from the contract with RDS. On May 25, 2009, IF, LLC entered into a second consulting agreement with Parsons.

Defendant's duplicate billing activity started on approximately February 6, 2006, and continued until January 14, 2010. Defendant's wife, Nancy Haberman, also known as Nancy Lezelle, helped Defendant to submit the duplicate bills. Mrs. Haberman was also a co-owner and co-manager of IF, LLC and Impact E3, LLC. Defendant and his wife agreed that Defendant would enter into overlapping

7

contracts for the same services, and would submit bills for those overlapping contracts and conceal their activity. All bills submitted were for either work by Defendant or expenses incurred by him. Defendant provided the receipts and documents to Mrs. Haberman, and Mrs. Haberman, as office manager, completed the invoices. All information provided to Mrs. Haberman by Defendant was also provided to the various entities by Defendant.

On May 26, 2009, Defendant caused Mrs. Haberman to submit an invoice to Parsons for Defendant's expenses for May 2009. Mrs. Haberman included trip summaries for travel expenses, which included taxi services, food expenses, airfare, and hotel expenses. For example, the invoice stated "cab to Parsons" for an amount of $14.00. The total amount for the invoice submitted to Parsons was $1,140.11. On June 1, 2009, Mrs. Haberman submitted an invoice to RDS for Defendant's services and expenses during the month of May 2009. That invoice covered airfare, taxi services, hotel expenses, and food expenses. This invoice was supported by the same documentation that was submitted with the Parsons invoice on May 26, 2009. For example, instead of saying "cab to Parsons" for $14.00, the RDS invoice simply said "cab" for $14.00. $976.89 in expenses were duplicated on the RDS invoice. The total amount for the invoice submitted to RDS as $1,226.11. It included two (2) additional charges: a cab for $17.00 and a dinner. Airfare, five (5) taxi services, the hotel, and a breakfast were identical on the Parsons and RDS invoices. The total amount of duplicate billings caused by Defendant was $84,884.55. The invoices were paid to Defendant's business.

Defendant stated he heard, understood, and agreed with Special Agent Bergstedt's testimony. From said testimony, the undersigned Magistrate Judge concludes the offense charged in the Information is supported by an independent basis in fact concerning each of the essential elements of such offense.

Defendant, David Phillip Haberman, in the presence of his counsel, Barry Boss and Sharon Potter,

proceeded to enter a verbal plea of **GUILTY** to the felony charge contained in the Information.

Upon consideration of all of the above, the undersigned Magistrate Judge finds that Defendant is fully competent and capable of entering an informed plea; Defendant is aware of and understood his right to have an Article III Judge hear and accept his plea and elected to voluntarily consent to the undersigned United States Magistrate Judge hearing his plea; Defendant understood his right to have his charges presented in an Indictment and knowingly, freely and voluntarily elected to proceed by Information; Defendant understood the charges against him; Defendant understood the consequences of his plea of guilty, including the statutory maximum sentence; Defendant made a knowing and voluntary plea of guilty to the Information; and Defendant's plea is independently supported by Special Agent Bergstedt's testimony, which provides, beyond a reasonable doubt, proof of each of the essential elements of the charge to which Defendant has pled guilty.

The undersigned Magistrate Judge therefore recommends Defendant's plea of guilty to the charge contained in the one-count Information herein be accepted conditioned upon the Court's receipt and review of this Report and Recommendation.

The undersigned further directs that a pre-sentence investigation report be prepared by the adult probation officer assigned to this case.

As to release, the Government indicated that it was not moving to detain Defendant pending further proceedings. Defendant, through counsel, requested that he not be subject to supervision by the Probation Office. Counsel for Defendant proffered that negotiations in this matter had been occurring for an extended period of time prior to the plea, and that Defendant had always appeared to speak to the Government when requested. The Government had no objection to Defendant's request. For good cause shown, the Court **GRANTED** Defendant's request for unsupervised release. However, Defendant must

abide by the following conditions:

1. Defendant shall not violate another federal, state, or local law.

2. Defendant shall notify the Court and the Probation Office prior to changing his residence and/or telephone number.

3. Defendant shall appear for all future court proceedings.

4. Defendant shall not possess a firearm.

5. Defendant is permitted to travel within and without the United States for business purposes.

Any party may, within fourteen (14) days after being served with a copy of this Report and Recommendation, file with the Clerk of the Court written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection. A copy of such objections should also be submitted to the Honorable Irene M. Keeley, United States District Judge. Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such report and recommendation. 28 U.S.C. § 636(b)(1); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); Thomas v. Arn, 474 U.S. 140 (1985).

The Clerk of the Court is directed to send a copy of this Report and Recommendation to counsel of record.

Respectfully submitted this 3rd day of April, 2015.

*John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE